## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DAVID ROBERT BENTZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:17-cv-654-GCS** |
| | ) | |
| **JAMES HOPPENSTED,** | ) | |
| **DARRON WHITLEY,** | ) | |
| **KENT BROOKMAN,** | ) | |
| **CLINT MAYER,** | ) | |
| **ANTHONY WILLS,** | ) | |
| **JOSHUA BERNER,** | ) | |
| **CHRISTOPHER FLEMING,** | ) | |
| **DONALD LINDENBERG,** | ) | |
| **VERGIL SMITH,** | ) | |
| **NATHAN BERRY,** | ) | |
| **MARC CONNER,** | ) | |
| **JERROD HAYSEMEYER,** | ) | |
| **RICHARD HARRIS,** | ) | |
| **CALEB ZANG,** | ) | |
| **SUSAN HILL,** | ) | |
| **TONYA KNUST,** | ) | |
| **LORI OAKLEY,** | ) | |
| **WILLIAM QUALLS,** | ) | |
| **JASON HART,** | ) | |
| **GREGORY MAYHUGH,** | ) | |
| **RYAN MARTIN, and** | ) | |
| **CALEB WEBB,**[1] | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff David Robert Bentz, an inmate in the custody of the Illinois Department

---

[1]      The Clerk of Court is DIRECTED to correct the name of Defendant C. Mayer to Clint Mayer, of Defendant Sgt. Richard Harris to Richard Harris, and of Defendant C/O Ryan Martin to Ryan Martin.

of Corrections ("IDOC"), alleges that Defendants violated his constitutional rights in a myriad of ways while he was incarcerated at Menard Correctional Center ("Menard"). By motion dated February 24, 2020, Defendants moved for partial summary judgment arguing that Bentz failed to exhaust his administrative remedies prior to filing suit. (Doc. 122). Bentz, through appointed counsel, responded in opposition on May 8, 2020, and supplemented his response without objection on May 15, 2020. (Doc. 133, 134). The Court held an evidentiary hearing on June 18, 2020. For the reasons delineated below, Defendants' motion is granted in part and denied in part.

### FACTUAL BACKGROUND

At all times relevant to his amended complaint, Bentz was incarcerated at Menard. Defendants Susan Hill and Tonya Knust were correctional counselors, and Defendant Lori Oakley was a correctional/grievance officer at Menard. Defendants Kent Brookman and Jason Hart were hearing officers on the adjustment committee, and Defendant Gregory Mayhugh was a clothing officer. Defendants Martin, Webb, Smith, Lindenberg, Fleming, Berry, Zang, Conner, and Haysemeyer were correctional officers. Defendants James Hoppensted, Clint Mayer, and Darron Whitley were lieutenants, and Defendants Joshua Berner, Anthony Wills, Richard Harris and William Qualls were sergeants.

In his amended complaint, Bentz alleges that in April 2015, Defendants Berner, Smith, Lindenberg, and Fleming destroyed his personal items, legal files, and law books in retaliation for Bentz filing grievances and lawsuits (Count 1). After the destruction of his property, Bentz claims that Defendants Berner, Smith, Lindenberg, Fleming, Berry, Wills, Zang, Mayer, Harris, Conner, Haysemeyer, Hoppensted, Whitley, Qualls, Knust,

Oakley, and Mayhugh retaliated against him by subjecting him to unconstitutional conditions of confinement from April 2015 through August 2015. He claims that they denied him basic needs like a change of clothes, bedding, pillows, linens, and laundry (Count 4).

Bentz also brings claims related to conduct that took place in 2016. He alleges that Defendants Hoppensted, Webb, and Martin either used, or failed to intervene against the use of, excessive force against him on June 27, 2016, again in retaliation for grievances and lawsuits Bentz had filed (Count 2). After the attack, Bentz claims that he was sent to punitive segregation without due process by Defendants Hoppensted, Brookman, and Hart in retaliation for his grievance activity in July 2016 (Count 3) and that he was subjected to unconstitutional conditions of confinement in segregation by Defendants Hoppensted, Brookman, Hart, and Hill from July 10, 2016, through August 10, 2016 (Count 5).

As to Count 1, Defendants argue that Bentz failed to exhaust his administrative remedies against Defendants Smith, Lindenberg, and Fleming. Defendants also argue that Bentz failed to exhaust his administrative remedies as to all named defendants in Count 2, Count 4, and Count 5. Defendants concede that Bentz exhausted his remedies as to Count 3 and as to Defendant Berner in Count 1.

1. **Grievances Related to Counts 1 and 4 (2015 Conduct)**

The records from the Administrative Review Board ("ARB") reflect a single grievance filed in April 2015. On April 14, 2015, Bentz filed a grievance (No. 65-5-15) related to retaliation, the denial of various property and legal papers, and issues with

access to the courts and to laundry, showers, and recreation. (Doc. 123-1, p. 156). In the grievance, Bentz explained that on April 8, 2015, Defendant Berner told him to pack his property because he was moving to a different cell. He alleged that Berner then sifted through his legal papers and took those documents that involved lawsuits against Berner and that Berner took or damaged various other items of Bentz's personal property.

According to Bentz, Berner acted in retaliation for recent lawsuits he filed, including one filed against Defendants Lindenberg and Smith. Bentz wrote that he only had excess legal materials because Defendant Smith denied him storage space for them. He did not allege that Defendants Lindenberg and Smith destroyed or confiscated his property, but he did ask that all three be transferred to a different cell house. (Doc. 123-1, p. 156-157).

Bentz filed another grievance on July 1, 2015, which he labeled "65-5-15 (#2)." (Doc. 123-1, p. 164). In that grievance, Bentz again addressed the events involving Berner on April 8, 2015. He wrote that Berner made it "crystal clear his retaliation was also a result of a recent lawsuit against Donald Lindenberg and Vergil Smith." He again alleged that Smith was responsible for denying him access to storage for his legal documents, resulting in confiscation of his materials, and that "the aforementioned C/Os to include Berner have made it known to grievant that they will continue to retaliate and punish this grievant and put grievant . . . in segregation for bogus/false disciplinary tickets . . . ." (Doc. 123-1, p. 165).

Bentz went on to explain that Defendant Fleming also came to his cell on April 8, 2015, and told him that his property was destroyed in retaliation for filing grievances and

lawsuits. The grievance goes on to allege that between April 8, 2015, and July 1, 2015, Bentz asked Defendants Berry, Wills, Lindenberg, Fleming, Smith, Zang, Mayer, Harris, Berner, Conner, Haysemeyer, and "other unidentified John Does" for his clothing, property, bedding, and for storage space for his legal materials. (Doc. 123-1, p. 165). Bentz also mentions the memorandum from Defendant Knust before asking (1) that his personal property be returned, (2) that his legal materials be returned, (3) that his legal books be returned, (4) that his damaged lamp and Con Air trimmers be repaired, (5) that his damaged television be repaired, and (6) that the healthcare unit repair or replace his eyeglasses, which he claims were damaged. (Doc. 123-1, p. 165).

Defendant Tonya Knust, in her role as grievance counselor, responded to the April 14, 2015 grievance with a memorandum dated April 30, 2015, the same memorandum mentioned in Bentz's July 2015 grievance. (Doc. 123-1, p. 154). On July 2, 2015, a grievance counselor responded to the July 1, 2015 grievance and explained that the issues were addressed previously and that the grievance was untimely. (Doc. 123-1, p. 164). Defendant Lori Oakley, in her role as grievance officer, denied the grievance on July 13, 2015. Her response referenced the July 1, 2015 grievance stating: "[a] second grievance is attached with duplicate issues but added Con Air Trimmer as missing." (Doc. 123-1, p. 150). The grievance officer, in denying the grievance, found that the "television and trimmers contract dates are 2010 and have no monetary value." (Doc. 123-1, p. 151). The Chief Administrative Officer ("CAO") concurred in the grievance officer's decision on July 23, 2015. (Doc. 123-1, p. 150).

Bentz timely appealed the denial of the April 2015 grievance to the ARB. The ARB received the grievance on August 4, 2015. *See, e.g.*, (Doc. 123-1, p. 150). The July 1, 2015 grievance is also stamped as received by the ARB on August 4, 2015. (Doc. 123-1, p. 164). The ARB responded to the appeal on January 25, 2016. The response classified the complaint as one for personal property and for retaliation by correctional officers. The appeal was denied because the ARB found that prison officials appropriately addressed Bentz's issues, writing, "[c]laims against C/O's Berner, Lindenberg, and Smith are unsubstantiated." (Doc. 123-1, p. 149).

### 2.   Grievances Related to Count 2 (Excessive Force in June 2016)

In a grievance dated June 30, 2016, Bentz alleged that Defendant Hoppensted used excessive force against him on June 27, 2016. He wrote that Lieutenant Fricky and John and Jane Does, including administrative, supervisory, security, and medical personnel, allowed it to happen and failed to address the assault after it occurred. (Doc. 123-1, p. 102). He refers to Defendant Hoppensted as the person who attacked him and to John Doe C/Os who were with him at various points, allegedly handcuffing Bentz and refusing to help him get medical treatment. (Doc. 123-1, p. 102). Bentz also asked for the identities of all the John Does described in the grievance. (Doc. 123-1, p. 103).

Susan Hill, in her role as a grievance counselor, responded to the grievance on July 21, 2016. (Doc. 123-1, p. 102). Defendant Oakley, as the grievance officer, denied the grievance on August 2, 2016. The CAO concurred in the recommendation on August 4, 2016. The grievance log shows that the grievance was returned to Bentz on August 10, 2016 (Doc. 123-5, p. 13). Bentz signed the appeal section of the grievance form on August

29, 2016, but the grievance was not marked as received by the ARB until September 14, 2016. (Doc. 123-1, p. 101). The ARB declined to rule on the merits of the grievance, finding that it was received outside the timeframe required by Department Rule 504. (Doc. 123-1, p. 100).

### 3.   Grievances Related to Count 5 (Conditions of Confinement in 2016)

In Count 5, Bentz alleges that Defendants Hoppensted, Brookman, Hart, and Hill subjected him to unconstitutional conditions of confinement from July 10, 2016, until August 10, 2016, when he was confined to an excessively hot and soiled cell with no window, no ventilation, and a solid steel door. He claims that the sink and toilet leaked and that there was raw sewage in his cell. He also alleges that he was deprived of sleep due to a broken light switch and that the cell had mold and mildew. Bentz further claims that he was forced to sleep on a soiled mattress and pill and that he was not given clean clothes, soap, toothpaste, or toilet paper. Defendants Brookman, Hart, and Hill allegedly knew of the harsh conditions and failed to assist Bentz.

In addition to the June 30, 2016 grievance, which did not involve conditions in segregation, Bentz filed two additional grievances during the summer of 2016. On July 28, 2016, he filed a grievance challenging a July 10, 2016 disciplinary report. (Doc. 123-1, p. 60). In the grievance, Bentz references an emergency grievance submitted on June 13, 2016, about excessive heat. He claims that he was moved as a result of filing the emergency grievance and that Major Bill Westfall told him that he should not have filed the grievance. Bentz claims that on June 26, 2016, Defendant Hoppensted said that Bentz couldn't continue to file grievances "without consequences." He claims Hoppensted then

threatened him with segregation for no reason and that on June 27, 2016, Hoppensted

assaulted him when Hoppensted caught Bentz writing a grievance. (Doc. 123-1, p. 60-61).

Bentz explained that after he filed a grievance about the assault, he spoke with

Sergeant Spiller in internal affairs. Then, on July 10, 2016, Bentz saw Hoppensted, who

stopped him and told him that he was sending Bentz to segregation for reporting him to

internal affairs. Hoppensted allegedly told Bentz that he hoped Bentz died in segregation

and that Hoppensted would ensure that Bentz was put into a bad cell. Bentz claims that

he was placed into a cell behind a solid door under unconstitutional conditions, as

described in an earlier grievance about the "excessive heat, sewer, and other." (Doc. 123-

1, p. 61). Bentz also alleged that Brookman told him that he was giving him segregation

for suing him. (Doc. 123-1, p. 62).

On September 2, 2016, Bentz filed another grievance about the July 10, 2016

disciplinary report and labeled it as a supplement to the July 28 grievance. He explained

that he received a report in discovery in one of his other pending lawsuits that was not

disclosed to him during his disciplinary proceedings. He also mentions Defendants Hart

and John and Jane Does as people who had the documents but allowed the false report

to proceed.

A grievance officer responded jointly to the July 28, 2016, and September 2, 2016

grievances and labeled the response as No. 13-9-16, the number on the September

grievance. The officer denied the grievance on September 19, 2016, and the CAO

concurred in the recommendation on September 22, 2016. Bentz timely appealed. With

his appeal, he included a proof of service document in which he stated he was sending

"grievance[s] #13-9-16, regarding disciplinary report dated 7/10/2016 304-insolince [sic] dated (grievance) 09/02/2016, and regarding disciplinary report dated 07/10/2016 (above) and constitutional violations, dated (grievance) 07/28/2016 (both combined respon[s]e) and attached letter to A.R.B." (Doc. 123-1, p. 69).

On April 6, 2017, the ARB responded to grievance 13-9-16. The ARB noted that issues of excessive heat were addressed in an earlier grievance, No. 7-2-16, which was filed in December 2015, and declined to consider Bentz's complaints about heat.[2] The ARB also noted that the alleged use of force was addressed through the June 30, 2016 grievance (No. 12-8-16) and would not be readdressed. The ARB then upheld the disciplinary sanction, ruling on the merits of the July 28 and September 2 grievances. (Doc. 123-1, p. 56).

In the supplement to his response, Bentz submitted an affidavit stating that he filed another grievance with his counselor on August 24, 2016. He did not receive a response from his counselor, preventing him from exhausting the grievance. He included a second exhibit that he describes as his personal copy of the August 24, 2016 grievance. In the grievance, he specifically complains about the conditions of confinement in segregation at issue in Count 5. He does not name any defendants by name, but he describes John and Jane Doe actors, including north two cell house staff and those

---

[2]      Grievance No. 7-2-16 was dated December 13, 2015, and the ARB found that only a single sentence on the back page about events in December 2015 was grieved within the timeline required by Department Rule 504. That sentence related to excessive heat over 90 degrees in the south cell house due to the furnace running "full blast." (Doc. 123-1, p. 104, 107). A grievance officer recommended denying the grievance, and the CAO concurred. (Doc. 123-1, p. 105). The ARB found the issue was handled appropriately by officials at Menard. (Doc. 123-1, p. 104). The issues raised by Bentz were unrelated to conditions in segregation.

supervisors and security personnel who directed that he be confined in the cell about which he complained. (Doc. 134-2).

### 4. Evidentiary Hearing

The Court held an evidentiary hearing on June 18, 2020. Bentz testified and explained that he submitted grievances to his counselor in two ways. Sometimes he put the grievances in institutional mailboxes, but he also submitted grievances by leaving them between the bars of his cell to be picked up by prison officials. Bentz explained that he usually was only out of his cell for one hour each day, so he often used the bars of his cell to mail documents within Menard. He also testified that he kept handwritten personal copies of the grievances he filed and that he marked on his copies information about how he submitted the original. As to the August 24, 2016 grievance, Bentz wrote on his copy that he filed it by placing it between his cell bars for retrieval.

The Court also heard testimony from Russell Niepert, a counselor at Menard, who explained that inmates are supposed to put grievances in the locked institutional mailboxes. Niepert also conducted rounds on August 26, 2016, and his records reflect that Bentz had no issues to discuss with him that day. Niepert did acknowledge that sometimes inmates use their bars to file grievances. However, he testified that the procedure called for using the mailboxes unless an inmate was confined to his cell due to a lockdown or was in segregation, neither of which applied to Bentz on August 24, 2016.

Bentz countered Niepert's testimony about their conversation by explaining that he did not always raise his complaints during counseling rounds because he tended to rely on and use the written grievance procedure. The Court also heard testimony from

Kelly Pierce, a grievance officer, regarding grievance procedures. Pierce agreed that inmates were supposed to use the mailboxes to submit grievances, but testified that grievances were not rejected if an inmate submitted them using the cell-bar method.

## LEGAL STANDARDS

Summary judgment is "proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added).

Generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). In *Pavey*, however, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that "[t]his

circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey*, the Seventh Circuit set forth procedures for a court to follow in a situation where failure to exhaust administrative remedies is raised as an affirmative defense. The Seventh Circuit stated the following:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate.  (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.  (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey*, 544 F.3d at 742.

As an inmate confined within the IDOC, Bentz was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims properly. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The grievance officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. *See* 20 ILL. ADMIN. CODE § 504.850(a). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief

Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures also allow an inmate to file an emergency grievance. *See* 20 ILL. ADMIN. CODE § 504.840. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine that] there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender [such that] the grievance [should] be handled on an emergency basis." 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender indicating what action shall be or has been taken." 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL.

ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

ANALYSIS

**1. 2015 Claims**

In Count 1, Bentz alleges that Defendants Berner, Smith, Lindenberg, and Fleming destroyed or interfered with his personal items in retaliation for Bentz filing grievances. Two grievances apply to these claims, one filed April 14, 2015, and the other filed July 1, 2015. The July grievance was marked as a supplemental or secondary grievance to the April 14, 2015 grievance, and it was considered by the grievance officer in responding to the April grievance, as evidenced by the mention of the Con Air trimmers, which were not mentioned in the April 2015 grievance. The grievances clearly address Defendant Berner's conduct, but the response from the ARB also acknowledges that Bentz was grieving conduct by Defendants Lindenberg and Smith. The content of the two grievances makes that clear as well.

An inmate is not required to provide personal notice to an individual defendant through his grievances. See *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011)(citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)(citing *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)(stating that "[w]e are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued."))). Instead, the purpose of a grievance is to provide "prison officials a fair opportunity to address [an inmate's] complaints." *Id.* Defendant Fleming is mentioned in

the July 2015 grievance as telling Bentz that his property was being mishandled or destroyed in retaliation for Bentz filing grievances and lawsuits, which is sufficient to put prison officials on notice about issues with Defendant Fleming's conduct. As such, the Court finds that Bentz fully exhausted his remedies as to all defendants in Count 1.

In Count 4, Bentz alleges that many individuals subjected him to unconstitutional conditions of confinement in 2015. Many of the defendants in Count 4 are listed individually in the exhausted July 1, 2015 grievance as engaging in conduct that is at the core of Bentz's claim against them. Defendants Knust and Oakley were involved in responding to the grievances, which is sufficient to satisfy the notice requirements of the grievance process. However, the July 2015 grievance does not mention Defendants Whitley, Qualls, or Mayhugh. Defendant Whitley is a lieutenant and Defendant Qualls is a sergeant, much like the other named parties, and the grievance includes unidentified John Does following the list of correctional officers, lieutenants, and sergeants. Defendant Mayhugh, on the other hand, is a clothing officer. Complaints about his conduct or the conduct of a clothing officer are not readily identifiable by Bentz's description of the grieved conduct. As such, the Court finds that Bentz exhausted his claims in Count 4 as to all defendants except for Defendant Mayhugh because the July 2015 grievance does not provide notice of any issues with Mayhugh's conduct.

### 2. 2016 Claims

In Count 2, Bentz alleges that Defendants Hoppensted, Webb, and Martin either used excessive force against him or failed to protect him from the use of excessive force on June 27, 2016. Bentz filed a grievance related to his excessive force claim on June 30,

2016, but his appeal of the grievance was rejected as untimely by the ARB. The CAO's response to the grievance was sent to Bentz on August 10, 2016. (Doc. 123-5, p. 13). Bentz signed the grievance indicating his intent to appeal on August 29, 2016, and testified that he put the appeal in institutional mail that day. The ARB did not receive his appeal until September 14, 2016, more than 30 days after it was returned to Bentz.

The Court finds Bentz's testimony that he sent the appeal on August 29, 2016, credible. In the same time period, Bentz appealed a different grievance, No. 13-9-16, that also was delayed in reaching the ARB. That grievance was returned to Bentz on September 23, 2016, and he signed the section indicating his intent to appeal on September 30, 2016. (Doc. 123-1, p. 57). Bentz also noted that he sent the appeal on September 30, but the ARB did not receive the appeal until October 14, 2016. This delay is nearly identical in length to the delay in the receipt of the June 30, 2016 grievance appeal and lends credibility to Bentz's testimony. The Court finds that Defendants failed to carry their burden of showing that the June 30, 2016 grievance was not fully exhausted. The grievance addresses the use of force by Defendant Hoppensted either with, or in the presence of, John Doe correctional officers. As such, the Court finds that Bentz's claims in Count 2 were exhausted fully before he filed suit.

In Count 5, Bentz alleges that Defendants Hoppensted, Brookman, Hart, and Hill subjected him to unconstitutional conditions of confinement while he was in segregation from July 10 through August 10, 2016. The ARB has record of two fully-exhausted grievances related to the claims in Count 5 dated July 28, 2016, and September 2, 2016. Susan Hill was not involved in the response to either grievance, nor is she named in the

grievances. The grievances mention that Defendant Hoppensted told Bentz that he would be sent to a "bad cell" and also allude to Bentz's claim about being locked behind a heavy door. With respect to Defendants Brookman and Hart, however, Bentz does not allege that they subjected him to unconstitutional conditions in these grievances other than by sending him to segregation following a disciplinary hearing. That is insufficient to provide prison officials with notice that there was an issue with Brookman or Hart's conduct towards Bentz's confinement in segregation.

The Court heard testimony about an August 24, 2016 grievance that is not in the ARB's files but that Bentz maintains he submitted and never received a response to. In the grievance, Bentz addresses all of the conditions of confinement that are alleged in Count 5 and asks for the identities of the responsible N-2 employees who were responsible for Bentz's confinement in a deficient cell. Defendants Brookman and Hart were members of the adjustment committee, so complaining about correctional officers subjecting Bentz to unconstitutional conditions would not provide prison officials with notice of issues with Brookman and Hart. Because the exhausted grievances discussed above do provide notice as to Hoppensted, the Court need not determine whether remedies were available to Bentz with respect to this grievance because it does not exhaust his claims against Brookman, Hart, or Hill as the grievance does not address any conduct by these three parties.

Further, it is clear from the ARB's response to the 2016 grievances that the reviewing official recognized a claim about conditions, namely excessive heat, but chose not to address the conditions of confinement aspect of the grievance because a December

2015 grievance also complained about excessive heat. The heat issue in the December 2015 grievance was separate and distinct from the conditions complaints Bentz raised as to his time in segregation in July and August 2016.

To the extent that the ARB declined to address Bentz's complaints about his segregation cell, administrative remedies could be deemed unavailable to him as to his claims in Count 5. A prisoner is not obligated to exhaust administrative remedies that are unavailable. *See Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). "Administrative remedies are primarily 'unavailable' to a prisoner where 'affirmative misconduct' prevents prisoners from pursuing" them. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016)(quoting *Dole*, 438 F.3d at 809 (noting that remedies were unavailable where prison officials "do not respond to a properly filed grievance.")). For all these reasons, the Court finds that Defendants failed to carry their burden as to the claims against Defendant Hoppensted in Count 5, and Count 5 shall remain pending against him.

## CONCLUSION

For the above-stated reasons, Defendants' motion for summary judgment for failure to exhaust administrative remedies (Doc. 122) is **GRANTED in part** and **DENIED in part**. Count 4 is dismissed without prejudice as to Defendant Mayhugh, and he shall be terminated from this action. Count 5 is dismissed without prejudice as to Defendants Brookman, Hart, and Hill, and Defendant Hill shall be terminated from this action. All other claims remain pending.

**IT IS SO ORDERED.**

Dated:  June 29, 2020.

Digitally signed
by Judge Sison
Date:
2020.06.29
17:30:33 -05'00'

_____

GILBERT C. SISON
United States Magistrate Judge